UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORIS KOTLYARSKY,

                    Plaintiff,


          -v-

UNITED STATES DEPARTMENT OF JUSTICE,
PREET BHARARA, *in his official capacity*, JAMES
COMEY, *in his official capacity*,

                    Defendants.

---

20 Civ. 9230 (PGG)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ..................................................................................................2

    I.     THE CRIMINAL CHARGES AGAINST KOTLYARSKY .................................2

    II.    KOTLYARSKY'S CRIMINAL PROCEEDINGS.................................................4

    III.   KOTLYARSKY'S GUILTY PLEA ....................................................................5

    IV.   KOTLYARSKY'S SENTENCING .....................................................................8

    V.    KOTLYARSKY'S § 2255 PETITION ..............................................................11

STANDARD OF REVIEW .................................................................................13

ARGUMENT .....................................................................................................14

    I.     KOTLYARSKY'S COMPLAINT MUST BE DISMISSED ...............................14

         A.    Kotlyarsky's Claims Are Barred By Collateral Estoppel .........................14

             1.    Kotlyarsky is Collaterally Estopped from Rearguing that
                  Defendants Violated Their *Brady* Obligations and Duty of
                  Candor ...............................................................................................16

             2.    Kotlyarsky is Collaterally Estopped From Arguing That
                  The Government Should Have Elicited Exculpatory
                  Testimony from Mitnik...................................................................17

             3.    Kotlyarsky is Collaterally Estopped From Arguing That He
                  Pleaded Guilty Under Duress...........................................................18

         B.    Kotlyarsky's Claims Are Barred By *Heck v. Humphrey* ..........................18

         C.    Kotlyarsky's Claims Are Barred By Sovereign Immunity .......................20

         D.    Defendants Cannot Be Sued Pursuant to § 1983 .....................................21

         E.    Kotlyarsky Has Failed to Plead the Elements of Malicious
             Prosecution...............................................................................................22

         F.    Kotlyarsky Has Failed to Plead the Elements of False Arrest ..................23

         G.    Kotlyarsky Has Failed to Plead the Elements of Intentional
             infliction of Emotional Distress................................................................24

CONCLUSION....................................................................................................25

i

# **TABLE OF AUTHORITIES**

CASES

*Abdel-Whab v. Orthopedic Ass'n of Dutchess Cnty.*, 415 F. Supp. 2d 293 (S.D.N.Y. 2006) ...... 15

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)...................................................................... 21

*Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012) .................................................................... 13

*Allen v. McCurry*, 449 U.S. 90 (1980).................................................................................... 15

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)................................................................... 19, 20

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003)......................................................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 13

*Baez v. City of New York*, No. 17 Civ. 1767 (BMC) (PK), 2019 WL 1050996 (E.D.N.Y. Mar. 3, 2019) ............................................................................................................................... 19

*Bernard v. United States*, 25 F.3d 98 (2d Cir.1994) .............................................................. 23

*Broughton v. State*, 37 N.Y.2d 451 (1975) ........................................................................ 23, 24

*Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986)................................................................... 24

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)............................................ i, 13, 25

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) ...................................................... 22

*Conklin v. Doe,* No. 01 Civ. 987 (LLS), 2002 WL 227067 (S.D.N.Y. Feb. 13, 2002) ............... 22

*Cox v. Aversa*, No. 18 Civ. 3898 (NSR), 2020 WL 815476 (S.D.N.Y. Feb. 19, 2020) .............. 19

*Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL 324880 (S.D.N.Y. Feb. 19, 2004).. 21

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ................................................................ 21

*Duamutef v. Morris*, 956 F.Supp. 1112 (S.D.N.Y. 1997).......................................................... 20

*Fairley v. Collins*, No. 09 Civ. 6894 (PGG), 2011 WL 1002422 (S.D.N.Y. Mar. 15, 2011)... 2, 14

*FDIC v. Meyer*, 510 U.S. 471 (1994) ................................................................................ 21, 22

*Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) .................................................................... 20

*Hayes v. County of Sullivan*, 853 F. Supp. 2d 400 (S.D.N.Y. 2012)............................................ 15

*Hertz Corp. v. City of New York*, 1 F.3d 121 (2d Cir. 1992) ....................................................... 13

*Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263 (S.D.N.Y. 2018) ...................... 14

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210 (2d Cir. 1987) .......................................... 22

*John's Insulation, Inc. v. Siska Const. Co.*, 774 F. Supp. 156 (S.D.N.Y. 1991) ......................... 22

*Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014)................................................... 24

*Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK), 2019 WL 1957537 (S.D.N.Y. May 2, 2019) .................................................................................................................................. passim

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995).......................................................................... 23

*Machibroda v. United States*, 368 U.S. 487 (1962) ................................................................... 19

*Magnotta v. Putnam Cty. Sheriff*, No. 13 Civ. 2752, 2014 WL 705281 (S.D.N.Y. Feb. 24, 2014) ................................................................................................................................................... 23

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ........................................................ 13

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006) ......................................................... 14

*McNeil v. United States*, 508 U.S. 106 (1993) ......................................................................... 22

*Montana v. United States*, 440 U.S. 147 (1979) ...................................................................... 14

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ......................................................................... 22

*Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975) ............................. 22

*Noel Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS), 2012 WL 12886971 (S.D.N.Y. Mar. 21, 2012)............................................................................................................................ 25

*Peay v. Ajello*, 470 F.3d 65 (2d Cir. 2006) .............................................................................. 19

*Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137 (E.D.N.Y. Apr. 17, 2009) ......... 20

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ................................................... 19

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ............................................... 24

*Rivera v. City of Yonkers*, 470 F. Supp. 2d 402 (S.D.N.Y. 2007) .......................................... 23

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) ............................... 20

*Romer v. Morgenthau*, 119 F. Supp. 2d 346 (S.D.N.Y. 2000) ................................................ 22

*Russell v. Smith*, 68 F.3d 33 (2d Cir. 1995) ............................................................................. 23

*Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) ..................................................................... 24

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) .................................................. 23

*Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995)........................................................................... 19

*TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) .................................... 14

*United States v. Doe*, 537 F.3d 204 (2d Cir. 2008).................................................................. 19

*United States v. Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013)........................................ 15

*United States v. Mitchell*, 463 U.S. 206 (1983) ....................................................................... 20

*United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).............................................................. 15

*United States v. Podell*, 572 F.2d 31 (2d Cir. 1978)................................................................ 14

*United States v. Sherwood*, 312 U.S. 584 (1941)..................................................................... 20

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) .......................................................................... 23

*Wyler v. United States*, 725 F.2d 156 (2d Cir. 1983)............................................................... 22

*Younger v. City of N.Y.*, 480 F. Supp. 2d 723 (S.D.N.Y. 2007)............................................... 20

## STATUTES

18 U.S.C. § 1951 ................................................................................................................ 4

18 U.S.C. § 2 ..................................................................................................................... 4

28 U.S.C. § 1346 .............................................................................................................. 22

28 U.S.C. § 2255 ........................................................................................................ passim

28 U.S.C. §§ 2671 *et seq* ................................................................................................ 22

42 U.S.C. § 1983 ........................................................................................................ passim

## RULES

Federal Rule of Civil Procedure 12(b)(1) .................................................................... 1, 13

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1, 13

Federal Rule of Civil Procedure 4(i)(3) .......................................................................... 21

## PRELIMINARY STATEMENT

Defendants the United States Department of Justice, and Preet Bharara and James Comey, sued in their official capacities, by their attorney Audrey Strauss, United States Attorney for the Southern District of New York, hereby move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

Plaintiff Boris Kotlyarsky ("Plaintiff" or "Kotlyarsky"), who was convicted in the United States District Court of the Southern District of New York of extortion and conspiracy to commit extortion, alleges that his arrest and prosecution violated his rights under the Fourth and Fourteenth Amendments and *Brady v. Maryland*, 373 U.S. 83 (1963).  But Kotlyarsky's civil claims, which attempt to relitigate his criminal case through the guise of a civil rights lawsuit, amount to nothing more than a collateral attack on his conviction and issues squarely decided against him in his criminal case.  Because a judgment in his favor would necessarily imply the invalidity of Kotlyarsky's criminal conviction, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Further, certain of the alleged constitutional violations Kotlyarsky asserts were raised directly and litigated fully in his habeas petition, brought pursuant to 28 U.S.C. § 2255, collaterally estopping him from rearguing them for a second time.

The Complaint suffers from numerous, additional infirmities including that the claims are barred by sovereign immunity, the Defendants cannot be sued pursuant to 42 U.S.C. § 1983, and the Complaint otherwise fails to state a claim.  For all of these reasons, and as set forth in greater detail below, the Complaint should be dismissed in its entirety, and judgment should be entered in favor of the Defendants.

1

## BACKGROUND

### I.   The Criminal Charges Against Kotlyarsky

On January 15, 2016, the United States Attorney's Office for the Southern District of

New York (the "Government") filed a criminal complaint, sworn to by a Special Agent of the

Federal Bureau of Investigation ("FBI"), alleging that Kotlyarsky brokered a deal between Boris

Nayfeld ("Nayfeld") and Oleg Mitnik ("Mitnik"), wherein Mitnik agreed to pay Nayfeld

approximately $125,000 in exchange for Nayfeld's promise to halt a pending contract for

Mitnik's murder.  (*See* Criminal Complaint, No. 16 Cr. 215 (LAK), Dkt. #1 (S.D.N.Y. Jan. 15,

2016)).[1]  The murder contract was allegedly issued by Mitnik's father-in-law, Anatoly Potik.

(*See* Compl. ¶¶ 2-3, 11).

According to the criminal complaint, when Kotlyarsky learned that Potik planned to hire

Nayfeld to kill Mitnik, he arranged a meeting with Mitnik, on or around October 31, 2015.  (*See*

Dkt. #1 at ¶ 5(a); Transcript of Plea Hearing, Dkt. #49 at 16-18).  At that meeting, at a restaurant

in Brooklyn, Kotlyarsky informed Mitnik that Potik had approached Nayfeld with a contract to

kill Mitnik in exchange for $100,000.  (*See id*.).  Kotlyarsky told Mitnik that he could arrange a

deal between Mitnik and Nayfeld to avoid the harm.  (Dkt. #1 at ¶ 5(a)-(b)).  Unbeknownst to

Kotlyarsky or to Nayfeld, Mitnik contacted law enforcement.  (*See id.* at ¶ 5(c)).  Law

enforcement recorded subsequent meetings and communications that Mitnik had with Kotlyarsky

and Nayfeld relating to the murder contract.  (*See generally,* Dkt. #1).  On December 3, 2015,

---

[1]      The Court may take judicial notice of the public records in Kotlyarsky's criminal case, which are both incorporated by reference and integral to the complaint.  *See e.g., Fairley v. Collins*, No. 09 Civ. 6894 (PGG), 2011 WL 1002422, at *1 (S.D.N.Y. Mar. 15, 2011).  Unless specified, all further docket citations in this letter refer to the docket in *United States v. Kotlyarsky*, No. 16 Cr. 215 (LAK).

Kotlyarsky again met with Mitnik and indicated that he could broker a deal between Mitnik and Nayfeld.  (*See id*. at ¶¶ 6-7).

On January 7, 2016, Kotlyarsky called Mitnik and told him to meet with Nayfeld and either "end the problem, or instead [say] that he is busy" and not attend the meeting.  (*See id*. at ¶ 9(b)).  The next day, Kotlyarsky and Nayfeld met with the Mitnik.  (*See id*. at ¶ 11).  At the meeting, Kotlyarsky introduced Nayfeld to Mitnik and then excused himself to a nearby table to "allow [Mitnik] and Nayfeld to discuss business."  (*Id*. at ¶¶ 12(a), 11(c)).  During the meeting, Nayfeld informed Mitnik that Potik had promised him $250,000 to kill Mitnik and had already transferred him $50,000 as partial payment on the murder contract.  (*Id*. at ¶ 12(b)).  When Kotlyarsky arranged the meeting, Kotlyarsky believed and intended that Nayfeld would demand money from Mitnik to halt the murder contract, and that due to Nayfeld's criminal reputation, Mitnik would likely pay the money that Nayfeld demanded.  (*See* Dkt. #49 at 16-18).

Three days later, on January 11, 2016, Kotlyarsky, Mitnik, and Nayfeld met again at another restaurant in Brooklyn.  (Dkt. #1 at ¶ 13(a)).  Kotlyarsky initially met with Nayfeld and Mitnik but then moved to a restaurant across the street, leaving Mitnik and Nayfeld to sit and discuss.  (*Id*.).  During the meeting, Nayfeld demanded $125,000, with $50,000 due by January 15, 2016.  (*Id*. at ¶ 14(b)).

On January 14, 2016, Mitnik met Nayfeld at a restaurant.  (*See id*. at ¶ 15).  Mitnik asked Nayfeld to assure him that he would be safe.  (*Id*. at ¶ 15(b)).  Nayfeld agreed to call Potik; Mitnik dialed Potik's number from his cell phone, and handed the phone to Nayfeld.  (*See id*.).  Nayfeld then threatened the person on the other end of the phone, warning that person not to touch Mitnik.  (*See id*.).  In Nayfeld's presence, Mitnik then wrote a check in the amount of $50,000 which he gave to Nayfeld.  (*Id*. at ¶ 15(c)).  Upon leaving the restaurant where the

meeting took place, the FBI arrested Nayfeld and Kotlyarsky.  (*See id.* at ¶¶ 15(d)-(e)).  When the law enforcement officers approached Nayfeld to arrest him, he tore up the check and uttered an expletive.  (*See id.*).

## II.   Kotlyarsky's Criminal Proceedings

On March 16, 2016, a federal grand jury indicted Kotlyarsky of one count of conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951, and one count of Hobbs Act extortion, in violation of 18 U.S.C. §§ 1951 and 2.  (*See* Dkt. #16).  On August 16, 2016, Kotlyarsky filed an omnibus pretrial motion which sought, *inter alia*, the dismissal of the indictment on the grounds that it failed to state a crime.  (Dkt. #27 at 3-5).[2]  Kotlyarsky argued that the Government had no evidence that he agreed with Nayfeld to extort Mitnik and that the indictment was defective in failing to provide him with notice as to what he was accused of doing in furtherance of the conspiracy.  (*See id.*).  The Government opposed the motion, and the Court denied the motion to dismiss on September 14, 2016.  (*See* Dkt. #32).

In the weeks before a scheduled November 7, 2016 trial, the Government discovered that Kotlyarsky had attempted to shape or prevent Nayfeld's testimony against him by (a) drafting an affidavit for Nayfeld's signature containing the false and miseadling statement that Nayfeld had merely attempted to sell Mitnik information; (b) providing protected case documents to Nayfeld's son; (c) proposing that Kotlyarsky sue Mitnik's family and share a portion of the recovery with Nayfeld's family; and (d) asking Nayfeld's son whether Nayfeld had considered what his criminal associates in Russia would think if they learned that Nayfeld had tesitified. (*See* Dkt. #58 at 6-7; Dkt. #35).

---

[2]     The omnibus pretrial motion also sought: (i) a bill of particulars from the Government; (i) the immediate disclosure of all *Brady* and *Giglio* material from the Government; and (iii) the immediate disclosure of all Jencks Act material.  (*See generally*, Dkt. #27).

On October 1, 2016, the Government produced supplemental discovery to Kotlyarsky, including documents related to the obstruction conduct. (*See* Dkt. #71-3). In a letter to Kotlyarsky's prior counsel dated October 1, 2016 (the "October 1, 2016 Letter"), the Government informed Kotlyarsky that a witness had "informed the Government . . . [that] the defendant was offered direct payment in connection with the events described in the Indictment, but declined the offer." (*Id*.).

On October 5, 2016, a grand jury returned a superseding indictment alleging that, in addition to the plot relating to the murder contract, Kotlyarsky and Nayfeld had also conspired to commit extortion by agreeing to use Nayfeld's "reputation for violence and association with organized crime figures to recover Kotlyarsky's business interests in Russia." (Dkt. #35 at 3). The superseding indictment also contained a new count of attempted witness tampering, based on the allegations that Kotlyarsky had attempted to influence Nayfeld's testimony by seeking to persuade Nayfeld to sign a false affidavit. (*See id*. at 5).

On October 12, 2016, Nayfeld pleaded guilty to one count of conspiracy to commit Hobbs Act extortion and one count of Hobbs Act extortion before Judge Katherine Forrest. (*See* Compl. ¶ 23). In his plea allocution, Nayfeld stated, *inter alia*, that "[i]t was [his] intention to share the money with [Kotlyarsky] but he said no." (*Id*.). At the Government's request, Judge Forrest ordered that the transcript be sealed. (*Id*. at ¶ 24).

## III.   Kotlyarsky's Guilty Plea

On October 27, 2016, pursuant to a plea agreement, Kotlyarsky pleaded guilty to Hobbs Act extortion and conspiracy to commit Hobbs Act extortion before United States Magistrate Judge Fox. (*See* Dkt. #49; Minute Entry at 10/27/2016). At the change of plea conference, Judge Fox, Kotlyarsky, and the Assistant United States Attorney had the following exchange:

THE DEFENDANT:  In the summer of 2015, I learned that Boris Nayfeld had been hired by Anatoly Potik to kill an enemy of Anatoly Potik.  Based upon the description of the person, I believed the person to be killed was Potik's son-in-law, Oleg Mitnik because of dispute over $20 million divorce case.

I knew Oleg Mitnik for many years.  At one time I want Oleg Mitnik to marry my daughter, who sits here in the room, and I inform Boris Nayfeld of this.  I did not want to see Mitnik harm her.

On October 31, 2015, I met with Mitnik and informed him that I believed Nayfeld had been hired by Potik to kill son-in-law, Oleg Mitnik.

It was later confirmed to me that indeed it was Mitnik who Potik had hired Nayfeld to kill Potik's son-in-law, Anatoly Potik, person who wants to kill his son-in-law.  I agreed with Nayfeld to introduce him and set up meeting with him and Mitnik, during which I suspect Nayfeld would demand money from Mitnik so that Nayfeld would not carry through his agreement with Potik.

I suspect that due to Nayfeld criminal reputation, Mitnik would fear Nayfeld and would likely pay [Nayfeld] the money he demanded.

Prior to Nayfeld meeting Mitnik, I did not know how much money Nayfeld would demand.  I would not expect to be paid any portion of the money Nayfeld would try to obtain from Mitnik.  There was no financial gain for me at all.

I have since learned that Nayfeld told Mitnik [$]125,000 and on January 14, Mitnik paid Nayfeld $50,000 with a check.  I learned later.  I didn't knew that it was going to happen [at the] meeting.

I know Mitnik did so out of fear that if he did not, Nayfeld might follow through on his agreement with Potik to kill Mitnik.  I want to prevent the tragedy and save human being lives.

My actions aided and abetted Nayfeld in obtaining money from Mitnik in this way.

I also know that this payment potentially affected interstate commerce in that Mitnik had a business based in New Jersey and the meetings with Mitnik and Nayfeld took place in Brooklyn, New York.

That's it, your Honor.  I'm sorry one more time.  There is no financial or any other gain for me was in this case.

THE COURT:  If I understood you correctly, you learned that a person's son in-law was to be killed and you agreed to set up a meeting where you suspected that an agreement would be made to prevent that killing for a demand of money.  Is that correct?

THE DEFENDANT:  I suspect, yes, sir.  Yes, your Honor.  I'm sorry.

THE COURT:  A demand for money was made of $125,000 and $50,000 was paid with respect to that demand, if I understood you correctly.

THE DEFENDANT:  Yes.  But I didn't know about $125,000.

THE COURT:  And you aided and abetted the receipt of that money, if I understood what you said correctly.  Is that right?

THE DEFENDANT:  The answer is yes.

THE COURT:  And because of the locations of the persons involved and their travel, this arrangement affected interstate commerce, if I understood you correctly, someone traveled from New Jersey --

THE DEFENDANT:  Yes, sir.  I did not -- his business was in New Jersey, but he live in New York.  Yeah. I take full responsibility.  I'm nervous.  I'm sorry, your Honor.  I understood that it could affect interstate commerce.

THE COURT:   When you engaged in the activities that you have just been describing, did you know that what you were doing was wrong?

THE DEFENDANT:  Yes.  The answer is yes.

THE COURT:  The meeting that you arranged where there would be a discussion about preventing the killing of someone's son-in-law, where did that occur?

THE DEFENDANT:  Meeting that I arrange happened in Brooklyn, but I arrange meeting because of ask him many times of Oleg Mitnik.  He want to see this guy.  Where it happen.  In Brooklyn.  It's on the request of Oleg Mitnik, this meeting was arranged.  It happened in Brooklyn.  I'm sorry.

THE COURT:  Are there any questions that the government would have me put to the defendant?

MR. THOMAS:  Yes, your Honor.  The government would invite the Court to inquire of the defendant whether he intended to create a circumstance where Mr. Nayfeld would be paid money.  I heard the defendant say he suspected such a circumstance would exist, but to invite the Court to ask him whether he intended for that to happen.

THE DEFENDANT:  I knew he will ask him for money.

THE COURT:  Sir, when you engaged in the conduct you have been describing, did you intend through your actions to create a circumstance where money would be demanded and paid?

THE DEFENDANT:  Number one, I tried to prevent a tragedy, but whole answer is yes.  Yes, your Honor.

THE COURT:  I want to be clear about what your answer is to my question.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  When you arranged for the meeting you described and that meeting was to create a circumstance where someone's son-in-law would not be killed, did you intend through your actions, as you described them earlier, to create a circumstance where money would be demanded and paid?

THE DEFENDANT:  The answer is yes, I suspect it.

THE COURT:  I'm not asking about what you suspect.

7

THE DEFENDANT:  I'm sorry.  Yes, your Honor.

THE COURT:  I'm asking about what you intended through your conduct.  Did you intend to create a circumstance?

THE DEFENDANT:  Yes.

THE COURT:  Where you arranged the meeting that you've been describing this morning?

THE DEFENDANT:  Yes, your Honor.

(Dkt. #49 at 16:22 to 21:09).  Judge Fox recommended that Judge Kaplan accept  Kotlyarsky's guilty plea (*id*. at 23:17-25), and on October 27, 2016, Judge Kaplan accepted Kotlyarsky's guilty plea (*see* Dkt. #45).

### IV.   Kotlyarsky's Sentencing

In advance of sentencing, the U.S. Probation Office prepared the Presentence Investigation Report ("PSR").  (*See generally* Dkt. #61).  The PSR included four paragraphs summarizing statements that Mitnik made to the Probation Office.  (*See* Dkt. #70).  Among those paragraphs, the PSR reported the following remarks:

- "the victim views Kotlyarsky as a middle man in this conspiracy";
- "[Kotlyarsky] never asked for or expected to be compensated financially for telling him about the contract";
- "The victim does not feel that Kotlyarsky should have been charged with extortion"; and
- "The victim is upset because Kotlyarsky allegedly wants to sue him for accusing him of committing extortion."

(*See id*. (quoting PSR ¶¶ 25-28)).

The Government did not object to the inclusion or content of those paragraphs in the PSR.  (*See id*.).  Kotlyarsky's counsel submitted a sentencing memorandum and, after the Government's submission, a supplemental letter that enclosed various transcripts of recordings.  (*See* Dkt. #56; Dkt. #59).  The fifteen-page sentencing memorandum included a number of arguments:

- Kotlyarsky's involvement in the crime was not for profit;

- Kotlyarsky acted to assure Mitnik's safety;

- The Court should consider the fact that Nayfeld would likely receive a downward departure from the Sentencing Guidelines for assisting the Government;

- Kotlyarsky's age and health warranted consideration; and

- The Court should consider Kotlyarsky's character as described in letters from his children and son-in-law.

(*See* Dkt. #56).  Among other things, the sentencing memorandum quoted the Government's October 1, 2016 Letter and the PSR's summary of Mitnik's remarks.  (*See id*. at 4-5).  The supplemental materials included transcripts of various discussions between Mitnik and Kotlyarsky.  (*See* Dkt. #59).

On May 31, 2017, Judge Kaplan held a sentencing conference.  (*See* Dkt. #61). Kotlyarsky's prior counsel argued, "Mr. Kotlyarsky clearly discussed the option with him of going to One Police Plaza and at that point in time, for whatever reason, neither Mr. Kotlyarsky or the victim decided at least to go at that point."  (*Id*. at 7:20-23).  Prior counsel also emphasized the Mitnik's view that Kotlyarsky deserved no punishment: "You Honor has the statement that appears in the presentence investigation report, and I can tell your Honor that the statement was echoed on the day of the arrest by the victim, that he wonders why Mr. Kotlyarsky was charged because were it not for Mr. Kotlyarsky, the victim believes that he would have been dead."  (*Id*. at 8:16-21).

Much of the argument focused explicitly on Kotlyarsky's motivation.  (*See id*. at 9-11). His prior counsel argued for a below Guidelines sentence because "the motivation for the individual involved in the extortion plot is a motivation to save a life, coupled with the facts, your Honor, that he asked for no money for himself directly from anyone and, in fact, when offered a percentage by Mr. Nayfeld, turned it down."  (*Id*. at 9:07-12).  Counsel repeatedly

emphasized that Kotlyarsky did not expect payment: "Again, if Mr. Kotlyarsky was in this for money, he would have easily taken a percentage from Mr. Nayfeld.  That would have meant that the victim probably wouldn't have known about that anyway." (*Id*. at 9:25-10:3).  In addition, Kotlyarsky's prior counsel attempted to minimize Kotlyarsky's business pitch to the Victim: "He probably could have gotten away with that and still pitched a deal, if that's what his intention was.  So I would suggest, most respectfully, that his intention was a good intention and not a bad intention." (*Id*. at 10:4-7).

For its part, the Government argued that Kotlyarsky's "sole purpose" in structuring the meetings between Nayfeld and Kotlyarsky was not to protect Mitnik.  (*See id*. at 13:12-14).  The Government explained how Kotlyarsky made the situation more fraught by introducing Mitnik to a notorious mobster and by repeatedly emphasizing to Mitnik that his life was in danger.  (*See id*. at 14:15-18).  And, of course, notwithstanding his various offers to go to law enforcement, Kotlyarsky did not do so.  (*See id*. at 14:23).  Instead, he purposefully and intentionally arranged for Nayfeld to demand money from Mitnik in exchange for Mitnik's safety.  (*See id*. at 15:06-16).

After hearing from both parties and Kotlyarsky himself, the Court imposed a forty-one month sentence of imprisonment, a sentence that fell at the lowest end of the Stipulated Guidelines Range.  (*See id*. at 19:3-9).  In explaining the sentence, the Court, in part, commented that Kotlyarsky's motives were not purely altruistic:

> For the reasons that are set out in the government's letter and that Mr. Thomas has just ably summarized, I do not accept that your conduct with respect to the extortion here was quite as selfless as you and your lawyer have portrayed it.  You saw, in my judgment, a situation of which you could take advantage, and you set about endeavoring to structure matters so that at the end of the day, in one way or another, there would be an economic benefit to you no matter how it turned out.  Although I don't have specific evidence before me to make an express finding—and I don't— it seems to me that it would have been entirely reasonable to expect and,

notwithstanding what I said already, more likely than not that you did expect that if Nayfeld was paid off, he would have something for you out of the payoff.  I understand there's been no express testimony or evidence that you and Nayfeld ever had a specific discussion or understanding, but I do think the logic of the situation is such that that was your intent and expectation.

Furthermore, you on more than one occasion discussed with the victim the possibility of your doing business, directly or indirectly, with the victim, which indicates that you expected, in one way or another, that if the victim survived this whole episode, there would be something in it for you from that side.

So, even assuming for the sake of discussion that you intervened in the first place with the goal of avoiding the murder of the victim at the instance of Potik, I do think—and I find—that you did it, in part, out of the view that you would and could benefit economically from that intervention.

(*Id*. at 17:11-16).

## V.   Kotlyarsky's § 2255 Petition

On February 23, 2018, Kotlyarsky filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  (Dkt. #66).  The petition was later supplemented by an 88-page attorney affirmation.  (Dkt. #72 ("Affirmation" or "Aff.")).  The Affirmation argued, *inter alia*, that: (i) Kotlyarsky's trial counsel was ineffective in failing to elicit Nayfeld's testimony; (ii) the Government violated its *Brady* obligations and duty of candor by failing to provide Kotlyarsky and the Court with Nayfeld's guilty plea transcript; (iii) Kotlyarsky's trial counsel was ineffective in failing to elicit, at sentencing, Mitnik's testimony that he believed Kotlyarsky to be innocent; (iv) Kotlyarsky's trial counsel was ineffective in failing to seek the consolidation of Kotlyarsky's case with that of Nayfeld and Potik; (v) these various errors on both the part of the Government and Kotlyarsky's trial counsel caused Kotlyarsky to plead guilty under duress; (vi) if the Court would have had access to Nayfeld's plea allocution, the Court would have rejected Kotlyarsky's allocution and plea; and (vii) Kotlyarsky's actions did not amount to extortion because he never intended to obtain money or property from Mitnik.  (*See id*. at 21-30, 40-72). The government opposed the petition (*see* Dkt. #76-77), Kotlyarsky filed a reply brief (*see* Dkt.

11

#78) and, on May 2, 2019, Judge Kaplan, who had overseen the criminal proceedings against Kotlyarsky, denied the petition.  *See Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK), 2019 WL 1957537 (S.D.N.Y. May 2, 2019) ("*Kotlyarsky I*").

On June 19, 2019, Kotlyarsky submitted what he claimed to be "new" information, including a New York Post article and email submitted with the reply brief in support of his original habeas petition, an affidavit from Mitnik, and specific lines from Nayfeld's plea transcript.  (*See* Dkt. #81).  The Court treated the submission as a motion for reconsideration and denied it because it was both untimely and without merit.  (*See* Dkt. #83).  Then, on February 27, 2020, Kotlyarsky again submitted pages of what he claimed to be "new" information.  (*See id*.).  However, Kotlyarsky failed to include any motion form or brief along with the list of "new" information.  (*See id*.).  Accordingly, the Court mailed Kotlyarsky a copy of the motion forms for a § 2255 habeas petition and the pro bono appointment of counsel.  (*Id*.).  On July 23, 2020, counsel for Kotlyarsky entered a notice of appearance on the docket and requested an extension of time to file a second habeas petition on Kotlyarsky's behalf.  (*See Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK), Dkt. #19-20 (S.D.N.Y. July 23, 2020)).  On July 24, 2020, the Court denied the extension request.  (*Id*. at Dkt. #21).

Most recently, on June 29, 2021, Kotlyarsky submitted two documents expressing a desire to testify before the Court about what he claims are various instances of government misconduct.  (*See* Dkt. #84, 85).  In his submission he reiterates his prior defense that his "only goal was to prevent a tragedy from happening and to save the life OF human being" (Dkt. #85 at 1-2), and asserts that his actions were a "noble deed" (Dkt. #84 at 1).  The same day the Court received Kotlyarsky's submissions it issued an order notifying Kotlyarsky that, to the extent he wishes to make a collateral attack on his conviction, he must do so pursuant to a motion under 28

U.S.C. § 2255.[3]  (*See* Dkt. #86).  The Court explained that because it had already denied

Kotlyarsky's prior § 2255 petition, he would need to seek leave from the Court of Appeals to file

a successive motion.  (*See id*.).  The Court ordered the Clerk to again send Kotlyarsky forms for

filing a § 2255 motion and for seeking the appointment of counsel.  (*See id*.).

**STANDARD OF REVIEW**

The legal standard for motions brought pursuant to Rules 12(b)(1) and 12(b)(6) are well

settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A district court must "accept[] all factual allegations in the complaint as

true, and draw[] all reasonable inferences in the plaintiff's favor." *Ahlers v. Rabinowitz*, 684

F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted).  A case is properly dismissed for

lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory

or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of showing

by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343

F.3d 619, 623 (2d Cir. 2003) (internal quotations omitted).

In deciding a motion under Rules 12(b)(1) and 12(b)(6), the Court may consider (among

other things) documents incorporated by reference, integral to the complaint, or "in plaintiffs'

possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v.

Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Hertz Corp. v. City of New York*, 1

F.3d 121, 125 (2d Cir. 1992).  It is well established that a district court may rely on matters of

---

[3]     The Court also explained that, to the extent Kotlyarsky "seeks only to testify about whatever he thinks he knows about alleged government misconduct over the years" he did not raise a case or controversy under Article III of the Constitution.  (Dkt. #86).

public record in deciding a motion to dismiss, including arrest reports, criminal complaints,

indictments, and criminal disposition data. *Fairley v. Collins*, 09 Civ. 6894 (PGG), 2011 WL

1002422, at *1 n.2 (S.D.N.Y. Mar. 15, 2011) (citations and alterations omitted); *see also*

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Hylton v. J.P. Morgan Chase Bank,*

*N.A.*, 338 F. Supp. 3d 263, 272-73 (S.D.N.Y. 2018).

## ARGUMENT

## I.   KOTLYARSKY'S COMPLAINT MUST BE DISMISSED

### A.   Kotlyarsky's Claims Are Barred By Collateral Estoppel

Collateral estoppel bars relitigation of an issue that was "actually and necessarily

determined by a court of competent jurisdiction . . . in subsequent suits based on a different cause

of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153

(1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a

court of competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation."). Under federal law, collateral

estoppel applies where the following four elements are met: (1) the issues raised in both

proceedings are identical; (2) the relevant issues were actually litigated and decided in the prior

proceeding; (3) the party to be estopped had a full and fair opportunity to litigate the issues in

that prior proceeding; and (4) resolution of the issues was necessary to support a valid and final

judgment on the merits. *TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 375 (S.D.N.Y.

1999).

It is well settled that a criminal conviction, whether by jury verdict or guilty plea,

constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those

matters determined by the judgment in the criminal case. *United States v. Podell*, 572 F.2d 31,

35 (2d Cir. 1978). Accordingly, collateral estoppel forecloses Kotlyarsky from revisiting issues

14

that were litigated and decided in his criminal proceedings.  *See Allen v. McCurry*, 449 U.S. 90,

102 (1980) (collateral estoppel applies when civil rights plaintiff attempts to relitigate issues

decided against him in the underlying criminal proceeding); *see also Hayes v. County of*

*Sullivan*, 853 F. Supp. 2d 400, 426-27 (S.D.N.Y. 2012) (collecting cases in which collateral

estoppel barred a plaintiff from bringing § 1983 action to relitigate issues already decided in the

plaintiff's criminal proceedings); *Abdel-Whab v. Orthopedic Ass'n of Dutchess Cnty.*, 415 F.

Supp. 2d 293, 307 (S.D.N.Y. 2006) (barring *Bivens* claim attempting to challenge conduct that

was litigated in criminal proceeding).

The Complaint regurgitates the arguments made in Kotlyarsky's § 2255 petition that: (i)

the Government violated its *Brady* obligations by failing to disclose Nayfeld's plea transcript and

the fact that, during his plea allocution, Nayfeld remarked that he had offered Kotlyarsky money

but Kotlyarsky declined; (ii) the Government is at fault for failing to introduce Mitnik's

"testimony" in Kotlyarsky's case;[4] and (iii) because of these violations, Kotlyarsky pleaded

---

[4]     It appears that Kotlyarsky alleges that the Government violated an unspecified disclosure
obligation by failing to put Mitnik's "testimony" before the court at his sentencing proceedings.
But of course the Government's obligations do not extend to calling witnesses to testify on
behalf of criminal defendants at sentencing.  In any event, the "testimony" that Kotlyarsky cites
is a letter, authored by Mitnik after the conclusion of the criminal case, that Kotlyarsky
submitted to the district court in connection with his § 2255 petition in which he states, among
other things, that "[a]t no point did [ ] Kotlyarsky ever ask [Mitnik] or lead [Mitnik] to believe
that he expected in any way to be compensated financially."  *Kotlyarsky I*, at *3.

This letter was not subject to *Brady* as it was never within the Government's possession,
and it appears that it did not even exist at the time of the criminal proceedings.  *See United States
v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D.N.Y. 2013) ("[T]he Government is not responsible
for information that is not in its possession.  *Brady* does not require the government to act as a
private investigator and valet for the defendant, gathering evidence and delivering it to opposing
counsel."), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).  To the extent
that Kotlyarsky takes issue with his trial counsel's failure to introduce such testimony at
sentencing, such an argument was already raised and rejected in Kotlyarsky's § 2255 petition.
*See Kotlyarsky I*, at *7.  And further, that argument is misdirected in a a civil rights action
against these Defendants.

guilty under duress.  (*See generally*, Compl.).  Accordingly, collateral estoppel applies to the entirety of Kotlyarsky's Complaint.  All of Kotlyarsky's alleged constitutional violations were raised directly and litigated fully in his § 2255 petition, collaterally estopping Kotlyarsky from rearguing them for a second time.  Indeed, Kotlyarsky's habeas petition was subject to extensive briefing and denied in a written decision on May 2, 2019, the reconsideration of which was also denied, on June 23, 2020.  (*See* Dkt. #66, 70-71, 76-78; *see also Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK) (S.D.N.Y.)).  Kotlyarsky had a full and fair opportunity to litigate the Constitutional claims he raises in this § 1983 action, and these issues were finally decided by Judge Kaplan.

### 1.    Kotlyarsky is Collaterally Estopped from Rearguing that Defendants Violated Their *Brady* Obligations and Duty of Candor

The Complaint alleges that Defendants violated their *Brady* obligation and duty of candor by failing to disclose the testimony given by Nayfeld at his plea hearing, the transcript of which was filed under seal.  Specifically, Kotlyarsky claims that Nayfeld's plea allocution constituted exculpatory evidence because it shows that Kotlyarsky never intended to obtain Mitnik's property; that the Government should have disclosed the transcript from Nayfeld's plea hearing to Kotlyarsky and to the Court; and that if the Court had had access to Nayfeld's testimony, it would have rejected Kotlyarsky's guilty plea for failing to make out the elements of extortion.  (*See* Compl. ¶¶ 23-34).  These exact arguments were raised in Kotlyarsky's § 2255 petition.  *See* Aff. ¶¶ 50-57, 59, 61-63.  Judge Kaplan thoroughly rejected Kotlyarsky's *Brady* argument:

> Kotlyarsky first argues that the government violated Brady by not disclosing the testimony given by Nayfeld at his plea hearing.[5]  This argument fails because Nayfeld's testimony does not establish Kotlyarsky's factual innocence.  To the

---

[5]     Separately, Judge Kaplan pointed out that Kotlyarsky's counsel knew the relevant portion of Nayfeld's testimony when Kotlyarsky entered into the plea agreement.  *See Kotlyarsky I*, at *6.

contrary, it established that Nayfeld conspired with Kotlyarsky to commit extortion. Kotlyarsky argues that the government was obligated to produce Nayfeld's statement that "[i]t was [his] intention to share the money with [Kotlyarsky] but he said no." As discussed above, the government sent Kotlyarsky's counsel a letter which advised that "a witness ha[d] informed the Government, in sum and substance, that the defendant was offered direct payment in connection with the events described in the Indictment, but declined the offer." Additionally, the intention of Nayfeld to share money from the extortion plot with Kotlyarsky and Kotlyarsky's declination of that offer does not establish Kotlyarsky's innocence with respect to the charges of conspiracy to commit and aiding and abetting extortion.

*Kotlyarsky I*, at \*7.  Accordingly, Kotlyarsky's claims based on the Government's compliance with its *Brady* obligations and duty of candor must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### 2. Kotlyarsky is Collaterally Estopped From Arguing That The Government Should Have Elicited Exculpatory Testimony from Mitnik

Kotlyarsky also argues that the Government somehow erred in failing to elicit "exculpatory" testimony from Mitnik that: (i) Kotlyarsky never asked Mitnik for money or led him to believe he expected to be financially compensated; (ii) he believes Kotlyarsky saved his life; and (iii) he believes Kotlyarsky should not have been charged with extortion.  (*See* Compl ¶¶ 35-36).  Again, Kotlyarsky raised this exact same argument in his habeas petition.  (*Compare* Compl. ¶¶ 35-36 *with* Aff. ¶¶ 65-66).  In rejecting this argument, Judge Kaplan held:

Kotlyarsky argues also that the government knew that Mitnik did not believe that Kotlyarsky had violated the law and should not have been charged with extortion, but did not disclose this evidence to Kotlyarsky.  This argument fails because the subjective impressions such as these of the victim of the extortion plot would have had no bearing on whether Kotlyarsky is in fact guilty of the charges against him. Additionally, the victim's perspective that Kotlyarsky's actions kept him from being killed is reflected in the criminal complaint.

*Kotlyarsky I*, at *8.  Accordingly, Kotlyarsky's claim that the Government should have elicited Mitnik's testimony must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### 3.   Kotlyarsky is Collaterally Estopped From Arguing That He Pleaded Guilty Under Duress

Finally, Kotlyarsky argues that the Government's *Brady* violations and failure to elicit Mitnik's testimony caused Kotlyarsky to plead guilty under duress.  (*See* Compl. ¶¶ 42-46, 65).  Again, this argument was raised and rejected in Kotlyarsky's § 2255 petition.  (*See* Aff. ¶¶ 102-08, 127).  Judge Kaplan specifically rejected Kotlyarsky's contention that his plea agreement be set aside because he agreed to plead guilty under duress caused by the Government.  *See Kotlyarsky I*, at 8.  Indeed, Judge Kaplan found that nothing about the circumstances of the plea negotiations gave rise to the belief that Kotlyarsky pleaded guilty under duress and "there [was] no evidence to support the allegation that the government violated its *Brady* obligations."  *Id.*  Accordingly, Kotlyarsky's claim that he pleaded guilty under duress must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### B.   Kotlyarsky's Claims Are Barred By *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held that civil claims arising from a plaintiff's criminal conviction are barred unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. 477, 487 (1994).  Pursuant to the rule announced in *Heck*, a plaintiff may not seek damages in a civil suit if a judgment in his favor "'would necessarily imply the invalidity' of a

prior state or federal criminal conviction or sentence." *Cox v. Aversa*, No. 18 Civ. 3898 (NSR), 2020 WL 815476, at *3 (S.D.N.Y. Feb. 19, 2020) (quoting *Heck*, 512 U.S. at 487)).

*Heck* mandates dismissal of the Complaint because a judgment in Kotlyarsky's favor would necessarily imply the invalidity of his conviction and sentence. 512 U.S. at 487; *see also Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). The gravamen of Kotlyarsky's complaint is that Defendants violated *Brady* by failing to disclose Nayfeld's plea allocution to Kotlyarsky and the Court. Claims sounding in *Brady* — that the defendants withheld exculpatory evidence — are barred by *Heck*. *See Poventud v. City of New York,* 750 F.3d 121, 132-33 (2d Cir. 2014) ("This Court has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred."); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (holding that *Brady* claims implicate the validity of the resulting conviction and are therefore barred by *Heck*).

Kotlyarsky's claim that he pleaded guilty under duress fares no better. To show that his guilty plea was coerced or given under duress, Kotlyarsky must show that it was induced by threats, misrepresentation, or improper promises. *See United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008). But such a showing would call into question the validity of his conviction because "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Id*. (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)); *see, e.g., Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (dismissing § 1983 claim premised on an allegedly coerced guilty plea as barred by *Heck*); *Baez v. City of New York*, No. 17 Civ. 1767 (BMC) (PK), 2019 WL 1050996, at *3 (E.D.N.Y. Mar. 3, 2019) (holding plaintiff's § 1983 claim that his guilty plea was involuntary barred by *Heck*).

Further, pursuant to *Heck*, courts routinely dismiss claims of, *inter alia*, malicious prosecution, conspiracy, false arrest, and deprivation of the right to a fair trial brought pursuant to § 1983 when such claims bear on the validity of an underlying conviction or sentence.  *See, e.g., Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to § 1983 conspiracy); *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest, false imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *Duamutef v. Morris*, 956 F.Supp. 1112, 1115-16 (S.D.N.Y. 1997) (dismissing § 1983 claims for, *inter alia*, malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction . . . .  Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)).  Accordingly, Kotlyarsky's civil claims, all of which arise from his criminal conviction, are barred by *Heck*.

### C.   Kotlyarsky's Claims Are Barred By Sovereign Immunity

The United States may not be sued without its consent; and the existence of consent is a prerequisite for jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Since an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  Here, Kotlyarsky sues the

United States Department of Justice, a federal agency, and Preet Bharara, the former United

States Attorney, and James Comey, the former director of the FBI, in their official capacities.[6]

Accordingly, Kotlyarsky attempts to maintain this action against the United States.  However,

the United States has not waived sovereign immunity for claims arising under § 1983, or any

other constitutional tort claim.  *FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994) (holding that the

Federal Tort Claims Act does not waive sovereign immunity for constitutional torts, and *Bivens*

claims can be brought only against federal officials in their individual capacities, not against the

United States and its agencies); *Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL

324880, at *10 (S.D.N.Y. Feb. 19, 2004) ("[T]he United States has not waived sovereign

immunity for actions arising under 42 U.S.C. § 1983.").  Accordingly, this action must be

dismissed for lack of subject matter jurisdiction.

### D.  Defendants Cannot Be Sued Pursuant to § 1983

Kotlyarsky's claims must be dismissed for the additional reason that the Defendants

reliance on § 1983 is misplaced.  The terms of § 1983 make plain the two elements that the

aggrieved party must prove for recovery, that (i) the defendant deprived him of a right secured

by the "Constitution and laws" and that (ii) the defendant deprived him of this right under color

of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  Actions of the federal

government or its officers are exempt from the proscriptions of § 1983.  *See District of Columbia*

*v. Carter*, 409 U.S. 418, 424-25 (1973).  Accordingly, Kotlyarsky cannot maintain § 1983 claims

against the United States Department of Justice, as an agency of the federal government, and

---

[6]     Counsel for the Government represents defendants Preet Bharara and James Comey in
their official capacities only.  To the extent that Kotlyarsky intends to sue Preet Bharara and
James Comey in their individual capacities, counsel notes that it does not appear that these
individuals have been served properly pursuant to Fed. R. Civ. P. 4(i)(3).

James Comey and Preet Bharara, as former officers of the federal government. *See Conklin v. Doe,* No. 01 Civ. 987 (LLS), 2002 WL 227067, at *4 (S.D.N.Y. Feb. 13, 2002) (holding § 1983 claim cannot lie against FBI); *John's Insulation, Inc. v. Siska Const. Co.*, 774 F. Supp. 156, 161 (S.D.N.Y. 1991) (dismissing § 1983 claims against the United States Army).[7]

### E.    Kotlyarsky Has Failed to Plead the Elements of Malicious Prosecution

The gist of a claim for malicious prosecution is the abuse of judicial process.[8]  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  In order to state a claim for the tort of malicious prosecution, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding

---

[7]    To the extent Kotlyarsky attempts to plead a § 1983 claim for conspiracy, such claims must be dismissed for the additional reason that Kotlyarsky fails to plead any allegations concerning a meeting of the minds.  *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).

[8]    To the extent Kotlyarsky attempts to plead his claims for malicious prosecution, false arrest, and intentional infliction of emotional distress as state law tort claims, rather than constitutional claims, such claims fall within the purview of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*.  Kotlyarsky has failed to allege that he has exhausted his administrative remedies by presenting his claim to the appropriate federal agency as required by the FTCA.  *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.  Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit.").  In the absence of compliance with the FTCA's presentment requirement, a district court has no subject matter jurisdiction over the claim.  *See Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (holding that burden is on plaintiff to demonstrate subject matter jurisdiction in compliance with the FTCA's requirements).

Additionally, to the extent the complaint attempts to plead such claims pursuant to the FTCA, the United States is the only proper defendant in such action: the FTCA does not grant federal courts jurisdiction over actions against individual defendants such as federal employees nor against federal agencies.  *See FDIC v. Meyer*, 510 U.S. 471, 476 (1994) ("[I]f a suit is cognizable under § 1346(b) of the FTCA, the FTCA remedy is exclusive and the federal agency cannot be sued in its own name."); *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975) ("[S]uit under the Federal Tort Claims Act lies here, if at all, only against the United States.  Neither the Postal Service nor the Postal Inspection Service, named as defendants, may be sued directly on claims brought under 28 U.S.C. § 1346(b)."); *see also* 28 U.S.C. §§ 2674, 2679(a).

against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995).  Here, Kotlyarsky's malicious prosecution claim must be dismissed for the simple and straightforward reason that his criminal proceedings, which resulted in a conviction pursuant to a guilty plea, did not terminate in his favor.  *See Magnotta v. Putnam Cty. Sheriff*, No. 13 Civ. 2752, 2014 WL 705281, at *6 (S.D.N.Y. Feb. 24, 2014) ("A guilty plea, even if it was a plea to fewer than all the charges, does not satisfy the 'favorable' termination element of a malicious prosecution claim." (citations omitted)); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) ("It is well settled that a guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim.").

### F.      Kotlyarsky Has Failed to Plead the Elements of False Arrest

Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A constitutional tort claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law, *see, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest," *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994), whether that action is brought under state law or as a federal civil rights claim, *see, e.g., Broughton v. State*, 37 N.Y.2d 451, 458 (1975) (under New York law, "[j]ustification may be established by showing that the arrest was based on probable cause"); *Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  If, following the arrest, the plaintiff was convicted of

23

the charges against him, that conviction normally "would be conclusive evidence of probable cause." *Broughton*, 37 N.Y.2d at 458; *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *see also Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014).

Here Kotlyarsky does not come close to establishing that his arrest was without probable cause. Kotlyarsky was arrested pursuant to a criminal complaint that was sworn to by a Special Agent Luke Hardison of the FBI. (*See* Dkt. #1). But more to the point, Kotlyarsky was indeed convicted of the offenses for which he was arrested: extortion and conspiracy to commit extortion. (*See* Dkt. #63). That conviction serves as conclusive evidence of probable cause for Kotlyarsky's arrest, barring his cause of action for false arrest.

## G.   Kotlyarsky Has Failed to Plead the Elements of Intentional infliction of Emotional Distress

The tort of intentional infliction of emotional distress "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted). Under New York law, then, a claim for intentional infliction of emotional distress requires a showing of: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019). Kotlyarsky has failed to adequately plead any of these elements. (*See* Compl. ¶¶ 102-104). Further, a claim for intentional infliction of emotional distress may not be sustained

against a governmental entity.  *See Noel Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS),

2012 WL 12886971, at *6-7 (S.D.N.Y. Mar. 21, 2012).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant

Defendants' motion to dismiss and dismiss Kotlyarsky's Complaint.

Dated:    July 6, 2021
         New York, New York

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for the Defendant*

By:      */s/ Tara Schwartz*
                                      TARA SCHWARTZ
                                      Assistant United States Attorney
                                      86 Chambers Street, 3rd Floor
                                      New York, New York 10007
                                      Tel.:  (212) 637-2633
                                      E-mail: tara.schwartz@usdoj.gov